IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KIRK LEE LONEY,

    Plaintiff,

v.                                    Civil Action No. 3:08CV820

DOUGLAS L. WILDER, et al.,

    Defendants.

## MEMORANDUM OPINION

    Plaintiff Kirk Lee Loney, a federal inmate proceeding pro se, brings this action.  Loney is proceeding on an Amended Complaint pursuant to 42 U.S.C. § 1983.  (Docket No. 55.)  On May 12, 2011, by Memorandum Opinion and Order (Docket Nos. 68, 69), this Court dismissed many of Loney's claims.  The following allegations remain concerning the actions of Defendants Sims and George:

> 6.  On or about the night of December 8th, 2006 Officer Sims and Trooper George were driving crazy behind me, and I didn't know who they were.  I heard a gunshot, so I took off; not knowing that Officer Sims and Trooper George had conspired to pull the car over.

> 7.  Officer Sims and Trooper George and other unknown officers beat me severely; bringing me around with smelling sauce and then beating me unconscious; several times, after forcing me into a major accident.

> 8.  I was beaten by police before I was handcuffed and after I was handcuffed.  At the emergency room, I was beat some more while floating in and out of consciousness.  I was administered several rounds of smelling sauce at the scene and the E.R. to

be questioned, after being involved in a major accident which to be, too much, for my heart and had to be rushed into an intensive care unit, once a doctor walked up and screamed on medical staff and police, saying, "Why haven't this man been placed on high alert!"

(Am. Compl. ¶¶ 6-8.) Based on the foregoing allegations, Loney makes the following pertinent claims for relief:

Claim 1    Defendants George and Sims violated Loney's rights under the Fourth Amendment[1] by using excessive force to effect his arrest.

Claim 2    Defendants George and Sims violated Loney's right to due process under the Fourteenth Amendment[2] by using excessive force against his person after he was arrested.

Claim 3    Defendants George and Sims violated Loney's right to free speech under the First Amendment.[3]

Claim 4    Defendants George and Sims violated Loney's rights under the Fifth Amendment.[4]

Defendants Sims and George have each filed motions for summary judgment. (Docket Nos. 76, 80.)  Both Defendant Sims and

---

[1] "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[3] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[4] "No person shall . . . be deprived of life, liberty, or property without due process of law . . . ." U.S. Const. amend. V.

Defendant George provided Loney with the appropriate Roseboro[5] notice. (Docket Nos. 76, 82.) Loney has responded. (Docket Nos. 99, 109.) The matter is ripe for disposition.

## I.   Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for

---

[5] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

trial.'"   Id.   (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251. "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (internal quotation marks omitted).

Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only cited materials . . . ."). Therefore, the Court's disposition of the Motion for Summary Judgment is based upon the materials Defendants Sims and George submitted in support of their Motions for Summary Judgment and the materials Loney submitted in opposition to the Motions for Summary Judgment.

Of course, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (holding that representations of a defendant during a plea hearing are a formidable barrier to subsequent incongruous assertions in a habeas proceeding) (citing Machibroda v. United States, 368 U.S. 487, 495-96 (1962)). Therefore, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (citing cases). Furthermore:

> In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations. Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). In the context of cases involving video evidence, [courts should] accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts.

Logan v. Smith, No. 11-10695, 2011 WL 3821222, at *1 (11th Cir. Aug. 29, 2011) (citing Pourmoghani-Esfahani, 625 F.3d at 1315 (parallel citation omitted)).

5

In support of his motion for summary judgment, Officer Sims has submitted his own affidavit. (Sims's Mem. Supp. Sum. J. Ex. A ("Sims Aff.") (Docket No. 77-1).) Trooper George, in support of his motion, has submitted his own affidavit and the affidavit of Simone Sapp. (George's Mem. Supp. Mot. Sum. J. ("George Aff.") (Docket No. 81-1); George's Mot. Amend. Mem. Supp. ("Sapp Aff.") (Docket No. 94-1).) Trooper George also has submitted a DVD recording of the night of Loney's arrest made by the in-dash camera in his patrol car. (George Aff. Ex. A ("DVD").)[6]   In response, Loney has submitted a "Motion in Opposition to Summary Judgement of Defendant George," an "Objection to Defendant George's Reply in Support of Motion for Summary Judgement," and a "Declaration in Opposition to Sims, et al., (Defendant's) Motion for Summary Judgement," all sworn under penalty of perjury pursuant to 28 U.S.C. § 1746. (Docket Nos. 99, 107, 109.) Loney has also submitted the transcript of a hearing in the General District Court of the City of Richmond in which Defendant Sims testified. (Docket No. 99-1.)

The Court also has before it a sworn Statement of Facts made during the plea proceedings in the criminal case against Loney that resulted from the incident in question here. United

---

[6] When citing to the DVD recording, the Court will follow the term "DVD" with a time. That time will refer to the time stamp visible on the screen while the DVD is playing, not the running time of the DVD.

States v. Loney, No. 3:02CR290, Docket No. 59 (E.D. Va. filed June 14, 2007) (hereinafter "Statement of Facts").[7]   This Statement of Facts was voluntarily signed by Loney after consultation with his attorney.   (Statement of Facts 2.)   Thus it will stand as "a formidable barrier" against any of Loney's contradictory claims.   Blackledge, 431 U.S. at 74; Scott v. Macy's East, Inc., No. 01-10323-NG, 2002 WL 31439745, at *9 (D. Mass. Oct. 31, 2002) ("[Plaintiff] may not evade summary judgment in this case with deposition testimony that contradicts his sworn admission of facts sufficient to establish the offense.").   Thus, in the absence of a convincing explanation resolving the disparity, these contrary assertions will not be considered.

Loney has made several statements which are directly contradicted by the Statement of Facts and/or the DVD.   For example, Loney states that he did not run from the police after his vehicle crashed and that he "did not resist arrest" at any time. (Pl.'s Decl. Opp'n Sims's Mot. Summ. J. ¶¶ 5, 16.)   Loney

---

[7]   During his plea colloquy on June 14, 2007, Loney was placed under oath. (Plea Colloquy June 14, 2007 ("Plea Colloquy"), file 2-07_01 at 3:01-3:13.)   Loney acknowledged that he would be bound by the statements that he made at that hearing. (Plea Colloquy file 2-07_01 at 3:45-3:50.)   Loney subsequently acknowledged that the Statement of Facts accurately represented the events in question and that he signed the Statement of Facts because it was true. (Plea Colloquy file 2-32_01 at 1:30-2:30.)

also suggests that he did not have a knife on his person on the night of his arrest. (Mot. Opp'n Summ. J. 1.) All of these statements are directly contradicted by the Statement of Facts. Loney has made no attempt to resolve this disparity, other than the bare assertions that he was coerced into signing the plea agreement and that the DVD has been tampered with. (Pl.'s Decl. Opp'n Sims's Mot. Summ. J. ¶¶ 9, 19.) Because Loney has failed to offer an adequate explanation for these controversial conclusory statements, they will not be considered by the Court. See Cleveland, 526 U.S. at 806; Logan, 2011 WL 3821222, at *1; Scott, 2002 WL 31439745, at *9.

## II. Summary of Pertinent Facts

On December 8, 2006, Defendants Sims and George were on patrol in the City of Richmond[8] when they noticed a car with a broken rear center brake light. (Statement of Facts ¶ 1; Sims Aff. ¶¶ 5-6; George Aff. ¶ 4.) The officers began following that vehicle in their unmarked police vehicle. (DVD 17:33.) It

---

[8] Sims was employed as a police officer by the City of Richmond and George was employed as a Virginia State Trooper by the Virginia State Police. (Sims Aff. ¶4; George Aff. ¶ 1.) Sims and George were working together as part of a joint state/local taskforce. (Sims Aff. ¶ 5; George Aff. ¶ 2.) George was operating an unmarked police vehicle equipped with lights and a siren with Sims as his passenger. (George Aff. ¶¶ 2, 3.)

was later determined that the vehicle with the broken tail light was being operated by Loney with Simone Sapp as his passenger.

## A.   Loney's Version of Events

Loney has supplied only the most limited description of the events that follow.   It is appropriate to first recite that evidence before turning to the remaining evidence in the record. Specifically, Loney swears that "Officer Sims and Trooper George and other unknown officers beat me severely; bringing me around with smelling sauce and then beating me unconscious; several times, after forcing me into a major accident.   I was beaten by police before I was handcuffed and after I was handcuffed." (Am. Compl. ¶¶ 7-8.)   Loney avers that "[t]here were more than two officers beating me on the scene.   I had head trauma from that asp and the accident."   (Mot. Opp'n Summ. J. 1.)   Loney also claims that the DVD submitted by Trooper George "is severely tainted both audio and visually."   (Id. at 2.)

## B.   The Initial Pursuit

Trooper George pulled his vehicle into position behind Loney's vehicle.   Loney's vehicle swerved slightly and Officer Sims said, "He knows you're on him."[9]   (DVD 17:33:41-42.) Trooper George then activated his emergency lights and stated,

---

[9] Later, while recounting these events to a third party, George stated, "I said 'He ain't got no brake light' and I said 'It's on!' just messin' with him.   Pretty soon I said, 'Here we go!'"   (DVD 18:03:58-18:04:06.)

"Run, bitch, run.   I want it, I want it to happen!"   (DVD 17:33:48-51.)   Loney's vehicle appeared to slow down and weave again slightly.   Trooper George stated, "He's pussed out, he's pussin' out.  He might not be, he might not be."  (DVD 17:33:55-17:34:00.)   Loney's vehicle then accelerated and Trooper George activated his siren stating, "Here we go!  It's on!  Let's hit the seat belts!"  (DVD 17:34:00-02.)   According to Sapp, Loney "tried to escape from the police in his vehicle that night when he heard police sirens behind our car."  (Sapp Aff ¶ 2.)   A pursuit ensued during the entirety of which the lights and siren of Trooper George's vehicle were activated. (Sims Aff. ¶ 7; George Aff. ¶ 4; DVD 17:34:00-17:36:50.)

### C.   The Car Wreck

During the pursuit Loney exceeded the speed limit and turned the wrong way down a one-way street.  (Sims Aff. ¶ 9; George Aff. ¶¶ 5-6; DVD 17:36.)   Loney then attempted to cross a divided roadway and was struck broadside, in the driver's side rear door, by a sport-utility vehicle.  (Statement of Facts ¶ 3; DVD 17:36.)   Loney's vehicle then swerved off the road, jumped the curb, struck a fire hydrant, and came to rest in an open, grassy area.  (Statement of Facts ¶ 3; DVD 17:36.)   Trooper George used the passenger side corner of his front bumper to pin the driver's side front door of Loney's vehicle shut. (Statement of Facts ¶ 4; DVD 17:36:52.)

### D.   Loney's Arrest

Loney then climbed over his passenger, Sapp, and exited his vehicle through the passenger door.   (Statement of Facts ¶ 4; Sims Aff. ¶ 16; George Aff. ¶ 7.)   Trooper George yelled at Loney to "get your hands up, you stupid motherfucker!"   (DVD 17:36:58.)   After a short foot pursuit, Officer Sims tackled Loney who "began to fight with Officer Sims."   (Statement of Facts ¶ 4; Sims Aff. 17-19; George Aff. ¶ 7.)   While Sims was struggling with Loney, Trooper George secured Simone Sapp. (George Aff. ¶ 7.)

### 1.   Placing Loney in Custody

During his struggle with Officer Sims, Loney repeatedly tried to reach into his front pocket and was "very combative." (Statement of Facts ¶ 4; Sapp Aff. ¶ 4 ("One of the officers . . . had to wrestle with Mr. Loney while that officer was trying to handcuff Mr. Loney, who was resisting arrest.").) Loney also attempted to reach for Sims's gun belt.   (Sims Aff. ¶ 20.)   During the struggle, "due to his larger size, [Loney] was able to get on top of [Sims]."   (Id. at ¶ 19.)   Officer Sims "employed leg and arm locks in order to gain control over [Loney]."   (Sims Aff. ¶ 24.)

Once Trooper George turned his attention to the struggle between Officer Sims and Loney, he found Officer Sims "lying on his back with [Loney] on top of him.   Officer Sims was facing

the back of [Loney's] head.  Sims had [Loney] in an arm bar in an attempt to restrict his movement and prevent his escape." (George Aff. ¶ 8.)  "Loney repeatedly tried to reach into his front pocket and was very combative."  (Statement of Facts ¶ 4 (capitalization changed).)  Trooper George screamed at Loney to "stop resisting, stop resisting!"  (DVD 17:37:16.)  "At that point [Trooper George] used [his] asp (a lightweight, retractable metal stick) to strike [Loney] approximately five or six times in the torso while telling him to stop resisting arrest."[10]  (George Aff. ¶ 9.)  "Despite the use of the asp, leg lock and arm lock [Loney] continued to resist and attempted to reach for his own waistband."  (Sims Aff. ¶ 25.)  During the struggle, Trooper George and Officer Sims continued yelling at Loney to "quit moving!"  (DVD 17:37:44-52.)[11]  Trooper George "believed that [striking Loney with an asp] was appropriate due to Officer Sims's position and [Loney's] continued resistance to arrest."  (George Aff. ¶ 9.)

---

[10] Simone Sapp states that "[w]hile the one officer was wrestling with Mr. Loney on the ground, the second officer hit Mr. Loney a few times with a metal stick to try and get him to stop struggling.  Both officers were telling Mr. Loney to stop struggling."  (Sapp Aff. ¶ 5.)  Loney seems to assert that Trooper George struck him in the head.  (Mot. Opp'n Summ J. 1 ("I had head trauma from that asp and the accident.").)

[11] Sounds of a struggle can be heard for almost a minute on the DVD after Trooper George initially tells Loney to stop resisting.  (DVD 17:37-38.)

The officers finally handcuffed Loney.   (Statement of Facts ¶ 4; George Aff. ¶ 10; DVD 17:37:54-58 ("Bring your other hand around!").)   "Even in handcuffs [Loney] resisted police." (Sims Aff. ¶ 27; Statement of Facts ¶ 6.)   Nevertheless, Trooper George and Simone Sapp both state that no force was used on Loney after he had been placed in handcuffs.   (George Aff. ¶ 10; Sapp Aff. ¶ 6.)   Trooper George then walked back to his vehicle and deactivated the siren.   (DVD 17:38:35.)   A search incident to arrest revealed that Loney was carrying a knife in his right front pants pocket, the area to which he had been reaching as he struggled with Officer Sims.   (Statement of Facts ¶ 5.)

### 2.   After Loney's Detention

Nothing on the DVD indicates that either Trooper George or Officer Sims, or any other officer, were still struggling with Loney once he had been handcuffed.   During the period prior to the arrival of other emergency vehicles, Officer Sims can be heard making a report over his radio while Trooper George, breathing heavily (as one might expect), can be seen walking slowly to his vehicle to retrieve his flashlight.   (DVD 17:39.) A minute later an unidentified male voice, perhaps Loney, states, "Hey man [inaudible] . . . y'all fucked my car up!" (DVD 17:40:05.)   An officer can be seen searching Loney's vehicle with a flashlight.   (DVD 17:40; George Aff. ¶ 11 ("After

reporting the incident, Officer Sims and [Trooper George] searched [Loney's] vehicle incident to arrest . . . .")

Other law enforcement personnel arrived by 17:40:33 at the latest. (DVD 17:40:33.) At this point George, in response to questions from an unknown officer, states:

George: "He was fightin' so I nailed him with the damn asp."

Unknown Officer: "You nailed him?"

George: "I did. He was fightin' Mark [Sims]; he was hittin' Mark with his [inaudible] so I, he kept on resisting."

(DVD 17:40:27-43.) Some six minutes later George and Sims can be heard having the following conversation:

George: "Hey [inaudible] he was fightin' the shit outta you, right?"

Sims: "Yeah, yeah."

George: "[inaudible] I mean, that's why I nailed him [inaudible]."

Sims: "[inaudible] yeah, no, no, no, I was on the ground I [inaudible]."

George: "It won't up to me [inaudible] 'cause you had all the arms but he was still fightin' [inaudible]."

(DVD 17:46:23-37.) George then addressed Loney saying, "You like that shit? You like officers telling you to stop resisting?" (DVD 17:46:40-44.) Loney's reply is inaudible.

Almost immediately thereafter George is told to switch Loney's hands from behind him to in front of him. (DVD 17:47.)

14

Trooper George and unknown other emergency personnel then prepared Loney for transport by rolling him onto a backboard. (DVD 17:47.) Several minutes later, an unknown officer, perhaps Sims, can be heard telling Sapp, "He's not here, he can't hurt you now," indicating that Loney had been transported off the scene. (DVD 18:01.) Loney "was transported to MCV[12] for treatment and remained combative." (Statement of Facts ¶ 6.) Neither Trooper George nor Officer Sims accompanied Loney to the hospital. (Sims Aff. ¶ 31; George Aff. ¶ 12.)

### E. Post-Arrest

After Loney had been transported to MCV, the DVD reveals that Officer Sims and Trooper George had several conversations with other people. During these conversations, they related to these third parties the events of the evening. Trooper George can be heard at one point speaking on a cell phone to an unknown party, saying:

> I chased [Loney] down in the car and I ended up hitting him with my car. . . . Oh yeah, I'm fine. He's not. I beat the fuck out of him with my asp. Well, I beat him with my asp because he was resisting more, trying to fight, you know.

---

[12] The Medical College of Virginia's ("MCV") hospital is currently referred to as VCU (Virginia Commonwealth University) Health Systems or VCU—HS. For the purposes of simplicity, the Court will refer to it as MCV throughout this opinion.

(DVD 17:53:09-22.)   Several minutes later Officer Sims and Trooper George can be heard recounting the incident to fellow officers:

> George:  "[Loney] climbed right over [Sapp]."
>
> Sims:  "And then [Loney] starts fighting with me and I'm holding him down and he's trying to get out [inaudible] I'm looking up and I see George [inaudible]."
>
> George:  "Hell yeah!  Ol' Cal Ripken baby![13]  Hell yeah!"
>
> Sims:  "[inaudible] yeah hit him again!"
>
> George:  "Stop resisting!  How you like that DT?  Stop resisting!  Bam!  Stop resisting!"

(DVD 18:14:32-46.)   The parties have submitted no other pertinent information.

### III.  Analysis

Analysis of Loney's claims that Trooper George and Officer Sims used unreasonable force against him must begin "by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Conner, 490 U.S. 386, 394 (1989) (citing Baker v. McCollan, 443 U.S. 137, 140 (1979)).  Loney's initial arrest was a seizure of

---

[13] Trooper George is likely referring to Cal Ripken, Jr., a former Major League Baseball player for the Baltimore Orioles. Ripken, a member of the Baseball Hall of Fame, is most famous for having played a record 2,632 consecutive games. Cal Ripken, Jr., The Columbia Encyclopedia (6th ed. 2008), available at http://www.encyclopedia.com/doc/1E1-RipkenCal.html.

his person and thus his claims of unreasonable force are cognizable under the Fourth Amendment.[14]   Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011).   Once Loney was lawfully arrested, he became a pretrial detainee.   U.S. v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990) (citing Martin v. Gentile, 849 F.2d 863, 865-66 (4th Cir. 1988)).   Claims of unreasonable use of force against a pretrial detainee must be evaluated under the Due Process Clause of the Fourteenth Amendment.   Id. (quoting Graham, 490 U.S. at 395 n.10).

A.   **Loney's Fourth Amendment Claim**

Loney's claims that Officer Sims and Trooper George used excessive force in effecting his arrest are evaluated under the matrix of the Fourth Amendment's prohibition against

---

[14] On the subject of what constitutional right protects a person once arrested, the Supreme Court has stated:

> Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins . . . .  It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.  See Bell v. Wolfish, 441 U.S. 520, 523-39 (1979).  After conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified."

Graham, 490 U.S. at 395 n.10 (second and third omissions in original; parallel citation omitted) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).

unreasonable seizures of the person.[15]   Both Sims and George argue that the force used to arrest Loney was not unreasonable and, even if it was, they are entitled to qualified immunity. (Sims's Mem. Supp. Summ. J. 6; George's Mem. Supp. Summ. J. 7.) "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry, 652 F.3d at 531 (citing cases).

In Saucier v. Katz the Supreme Court set forth a two-step inquiry for determining violations of the Fourth Amendment.   533 U.S. 194 (2001).   Consistent with the Supreme Court's decision in Pearson v. Callahan, this Court exercises its sound discretion to use the two-step procedure of Saucier, which asks first, whether a constitutional violation occurred and second, whether the right violated was clearly established.   555 U.S. 223, 236 (2009); Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010) (citations omitted).

The Fourth Amendment protects an individual's right to freedom from arrests and detentions "'effectuated by excessive force.'"  Henry, 652 F.3d at 531 (quoting Schultz v. Braga, 455

---

[15]   Loney also seems to suggest that Trooper George and Officer Sims caused his accident.   (Am. Compl. ¶ 7.)   To the extent Loney was trying to bring such a claim, it is clearly foreclosed by the record.   The DVD plainly shows that Loney was a victim of his own recklessness during his criminal flight from police.   (DVD 17:34-37.)

F.3d 470, 476 (4th Cir. 2006).   "Whether an officer has used excessive force is analyzed under a standard of objective reasonableness."   Id. (citing Scott v. Harris, 550 U.S. 372, 381 (2007)).   The standard for determining reasonableness requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.   Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985) (internal quotations omitted)).   In Graham the Supreme Court identified several factors for use in this evaluation "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   Id. at 396 (citing Garner, 471 U.S. at 8-9). In addition, the Supreme Court cautioned that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.   Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396-97 (internal citation and quotation omitted).

As stated above, this reasonableness inquiry is an objective one. Id. at 397. Courts must analyze an officer's actions through the lens of a reasonable police officer at the same scene under the same facts and circumstances. Id.; Meyers v. Baltimore Cnty., --- F. Supp. 2d ---, No. L—10—549, 2011 WL 4526021, at *5 (D. Md. Sept. 28, 2011). "'[O]fficers are not required to use the least intrusive means available,'" but "'simply must act within the range of reasonable conduct." Meyers, 2011 WL 4526021, at *5 (quoting Henry, 652 F.3d at 546 (Shedd, J. dissenting)).

Here, the crimes at issue are Loney's attempt to flee from Trooper George and Officer Sims by driving at high speeds through an urban environment and his fleeing the scene of an accident. (Sims Aff. ¶ 6-13; George Aff. ¶ 4-6.) Further, once the vehicle chase ended, Loney still attempted to evade arrest by fleeing on foot. (Statement of Facts ¶ 4.) During his active resistance to arrest by Officer Sims, Loney posed a continuing danger to both Sims and Trooper George as he

attempted to reach both for Sims's gun belt and for his own front pocket (where, it was later discovered, he was carrying a "lock-blade knife"). (Id. at ¶¶ 4-5; Sims Aff. ¶ 29.) Thus, with respect to Sims, all of the Graham factors weigh against Loney. Graham, 490 U.S. at 396. Sims used only leg locks and arm locks to combat Loney during his arrest even though Loney was of "larger size." (Sims Aff. ¶ 19, 24.) Given the above factors, it is incontrovertible that a reasonable officer in Sims's position would have found Sims's use of force reasonable. Accordingly, Sims is entitled to summary judgment on Claim 1.

Although Trooper George used a greater degree of force than Officer Sims, such force was also reasonable. When Trooper George turned from securing Sapp, he had only a few seconds to decide how best to assist his partner. Trooper George saw Loney, who was larger than Sims, not merely attempting to flee but actively fighting with Officer Sims. (George Aff. ¶ 8.) At the same time, Loney was trying to reach for his pocket. (Id.) Given these circumstances, a reasonable officer could have inferred that Loney was reaching for a weapon to use in his struggle with Officer Sims. In Trooper George's split-second judgment, the best way for him to secure both his and Sims's safety was to strike Loney with his asp in an effort to induce him to comply with the arrest. (George Aff. ¶ 9.) This Court, looking at the situation "from the perspective of a reasonable

officer on the scene" and having considered the <u>Graham</u> factors must conclude that Trooper George's initial use of force was reasonable. <u>Graham</u>, 490 U.S. at 396-97 (<u>citing</u> <u>Terry</u>, 392 U.S. at 20-22). Moreover, the record amply supports the conclusion that Trooper George's subsequent blows with the asp also constituted a reasonable use of force. Although Loney had been struck with the asp and again commanded to stop resisting, he did not do so. Instead, "[d]espite the use of the asp, leg lock and arm lock [Loney] continued to resist and attempted to reach for his own waistband." (Sims Aff. ¶ 25.) Thus, the total of five or six blows landed by Trooper George amounted to a reasonable use of force.[16]

Because this Court finds that both Trooper George's and Officer Sims's actions were reasonable, it need not consider whether they are entitled to qualified immunity. <u>Henry</u>, 652 F.3d at 531 ("'If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there.'" (alteration in original) (<u>quoting</u> <u>Abney v. Coe</u>, 493

---

[16] The Court recognizes that Trooper George did not at all times display the type of measured attitude and professional demeanor that law enforcement personnel continually strive toward, and which courts and the public rightfully expect. (<u>See</u> e.g., DVD 17:33:48-51 ("Run bitch run. I want it, I want it to happen!"); DVD 18:14:32-46 ("Hell Yeah! Ol' Cal Ripkin baby, hell yeah!").) However, in this case, Trooper George's conduct does not change the outcome regarding the Constitutional parameters of Loney's arrest.

F.3d 412, 415 (4th Cir. 2007))). Because of the foregoing, Trooper George and Officer Sims are both entitled to summary judgment on Claim 1.

## B. Loney's Fourteenth Amendment Claim

Loney became a pretrial detainee, as opposed to an arrestee, once he was lawfully arrested. Cobb, 905 F.2d at 788 (citing Martin, 849 F.2d at 865-66). The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees.[17] Id.; Graham, 490 U.S. at 395 n.10. Under the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell, 441 U.S. at 535-36 (citing cases). "[I]n this context, to have been excessive, the use of force must have been intended as punishment." Cobb, 905 F.2d at 788.[18]

_____

[17] "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.

[18] To determine whether the Due Process Clause has been violated with respect to a pretrial detainee, this Court must consider:

> such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.

Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) (internal quotation marks omitted).

Here, Loney makes only a naked, general assertion that excessive force was used against him:

> (b)   Officer Sims and Trooper George and other unknown officers beat me severely; bringing me around with smelling sauce and then beating me unconscious; several times, after forcing me into a major accident.
> (c)   I was beaten by police before I was handcuffed and after I was handcuffed. At the emergency room, I was beat some more while floating in and out of consciousness.

(Pl.'s Decl. Opp'n Sims's Mot. Summ. J. ¶ 4(b)-(c) (internal citation omitted).) Loney's other statements about his alleged mistreatment at the hands of police fail to state with specificity what abuse occurred prior to his arrest and what occurred after his arrest. (See Mot. Opp'n Summ. J. 1 ("[P]olice . . . exacerbated my injuries by beating me unconscious and bringing me back around with smelling sauce several times. There were more than two officers beating me on the scene. I had head trauma from that asp and the accident."); Pl.'s Decl. Opp'n Sims's Mot. Summ. J. ¶ 7 ("I was in a state of shock and incoherent after the accident in which I was beaten unconscious and brought back around with smelling sauce; several times at the scene of the car accident and the E.R.").)

Further, Loney fails to provide specific evidence, or even make specific accusations, that Sims and George struck him after they placed him in handcuffs. See United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) (observing "[a]iry

24

generalities" cannot "stave off summary judgment") (alteration in original; internal quotation marks omitted).   Instead he accuses "police" generally.   Loney's statement, "police beat me," is not enough to survive summary judgment.  Smith v. Stone, No. 99-3208, 2000 WL 687672, at *6 (6th Cir. May 19, 2000) (granting summary judgment where plaintiff only made general references to "officers of the Toledo (Ohio) Police Division" and did not identify any specific action taken by any of the particular defendants); see Drake v. Minn. Mining & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (internal quotation marks and citations omitted)); see also Gabrielle M. v. Park Forest-Chicago Heights, Ill. School Dist. 163, 315 F.3d 817, 822 (7th Cir. 2003) ("Thus, Gabrielle cannot avoid summary judgment by asserting general allegations that Jason 'bothered' her by doing 'nasty stuff.'"). As stated previously, George and Sims unquestionably used force against Loney to place him in handcuffs; however, as explained below, the record does not support any inference that either George or Sims were the officers who brought Loney back to consciousness with "smelling sauce" and then beat him unconscious again, even presuming that occurred.

Loney admitted in the Statement of Facts that he was combative both before and after his arrest. (Statement of Facts ¶¶ 4, 6.) Both Trooper George and Simone Sapp asserted in their affidavits that no force was used against Loney after he had been placed in handcuffs. (George Aff. ¶ 10; Sapp Aff. ¶ 6.) Further, the audio on the DVD and the time sequence of the in-dash camera belies the possibility that, after Loney was handcuffed, either Trooper George or Officer Sims beat Loney and brought him back around several times, prior to being transported to MCV.

At the earliest, Loney's arrest concluded at 17:37:54. (DVD 17:37:54 ("Bring your other hand around!").) The microphone on the in-dash recording system is sensitive enough to pick up Trooper George muttering to himself as he walks back and forth between the two vehicles. However, it picks up no sounds of the beating that Loney claims was occurring at that time.

Less than two minutes later other emergency personnel are on the scene and the audio picks up the mundane minutia of police work: Trooper George and another officer assess the damage to the vehicles as other officers search Loney's vehicle and catalogue the results. (DVD 17:41.) Yet, Loney would have the Court believe that at this time other officers had joined George and Sims in beating him. At no time does the audio reveal anything to support the assertion that Loney was being

26

continually beaten, brought back to consciousness, and beaten unconscious again during this period. (Decl. in Opp'n to Sims's Mot. Summ. J. ¶ 4(b).) Seven minutes pass before Trooper George is asked to prepare Loney for transport. (DVD 17:47.) At that time, Trooper George can be heard asking medical personnel if Loney needed a cervical collar for transport. The sounds of Loney being maneuvered onto a backboard can then be heard. Still, nothing indicates that the vicious post-arrest beating that Loney alleges occurred. Fourteen minutes later the ambulance carrying Loney is presumably gone as an officer tells Sapp, "He's not here, he can't hurt you now." (DVD 18:01:23.)

The United States Court of Appeals for the Fourth Circuit has stated:

> While we have recognized generally that when considering a motion for summary judgment, the district court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992), cert. denied, 507 U.S. 918 (1993), we hasten to add that those inferences must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture.

Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995) (parallel citation omitted) (citing Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 817 (4th Cir. 1995)). Assuming as we must that Loney was beaten after being placed in handcuffs, the reasonable conclusion (given the DVD

audio, the other evidence, and the ambiguity of Loney's sworn statements) is that this assault could have occurred only after Loney had left the scene of the arrest at the hands of officers other than Sims and George. Sylvia Dev. Corp., 48 F.3d at 818 (emphasizing that reasonable inference must be determined "in light of the competing inferences to the contrary") (internal quotation marks omitted). The evidence is incontrovertible that Sims and George did not leave with Loney (both voices can be heard on the DVD after Loney had been transported). Thus Sims and George cannot be the officers who, even taking his assertions as true, beat him.

"The mere statement by plaintiff that excessive force was used against him cannot withstand defendants' well-reasoned summary judgment motion." Patterson v. Brown, No. 2:09-1298-DCN-RSC, 2010 WL 2927479, at *3 (D.S.C. July 22, 2010) (citing Sylvia Dev. Corp., 48 F.3d at 818. To overcome a motion for summary judgment, "the quality and quantity of the [non-moving party's] evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson Everett, Inc., 57 F.3d at 1323 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Here, Loney has failed to adduce any evidence sufficient to allow a reasonable juror to conclude that Trooper George and Officer Sims used excessive force on him after his

arrest.   Thus, Trooper George and Officer Sims are both entitled to summary judgment on Claim 2.

### C.   Loney's First Amendment Claim

As best as the court can discern, Loney alleges that the entire arrest was a First Amendment retaliation claim.[19] "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006) (internal citation omitted; alteration in original) (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n.10, 592 (1998)).   To sustain a claim that prosecution was induced by an official bent on retaliation, a plaintiff must

---

[19] The Fourth Circuit has stated:

> Principles requiring generous construction of pro se complaints are not, however, without limits. . . . [They do] not require [District] courts to conjure up questions never squarely presented to them.   District judges are not mind readers.   Even in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments. . . .

Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).   Here, Loney asserts only that his rights "under the 1st, 4th, 5th, and 14th, Amendments" were violated on December 8, 2006, but does not specify what conduct violates which right. (Am. Compl. ¶ 1.)   This leaves the Court to fit his accusations into the scheme of constitutional protections as best as it can.

plead and prove the absence of probable cause for his arrest. Id. at 265-66.

Here, Loney asserts that Officer Sims and Trooper George knew his identity prior to their pursuit of him on December 8, 2006 and were part of a conspiracy to deprive him of his constitutional rights.

> Therefore, let the record reflect it is plaintiff's belief that defendants held a sadistic animus toward him for being a spokesman for the Marco Loney For Justice Committee which entailed speaking out against police officers who shoot unarmed young African American men down in cold blood, while pursuing his college career in 1995. And, as a result, of me being in that committee my college career was destroyed by constant police harassment which led up to the following conspiracy to deprive me of my constitutional rights by harboring an evil eye of me through this political view for many years.

(Am. Compl. ¶ 5.) Loney does plead that there was no probable cause for his arrest. (Pl.'s Decl. Opp'n Sims's Mot. Summ. J. ¶ 9 ("I cannot see the brake light . . . while I'm driving the car, but I do know the [DVD] is tampered").) However, he fails to prove the lack of probable cause.

The Statement of Facts reflects that Loney's vehicle had an "inoperable rear center brake light" on the night of his arrest. (Statement of Facts ¶ 1.) Trooper George and Officer Sims, having seen that, would have probable cause to initiate a traffic stop, which they did. (Id.) Once Loney attempted to elude police in his vehicle, Trooper George and Officer Sims had

probable cause to arrest him.   (Id. at ¶¶ 2-3.)   A search incident to arrest revealed the drugs for which Loney was eventually incarcerated.   (Id. at ¶¶ 5, 7-8.)   Because Loney has failed to prove the absence of probable cause, Officer Sims and Trooper George are entitled to summary judgment on Claim 3.   See Hartman, 547 U.S. at 265-66.

### D.   Loney's Fifth Amendment Claim

Here, neither Loney's Amended Complaint nor any of the other documents he has submitted implicate a Fifth Amendment violation.   See Beaudett, 775 F.2d at 1278.   Because Loney's Fifth Amendment rights have not been implicated, much less violated, Officer Sims and Trooper George are entitled to summary judgment on Claim 4.

### IV.   Further Proceedings

By Order issued on May 12, 2011 (Docket No. 69), Loney was required to serve Defendants Sims, George and an unknown defendant or defendants referred to as Unknown Officers #1 within 120 days.   See Fed. R. Civ. P. 4(m).   That period ended on Wednesday, August 10, 2011.   Loney has provided neither names nor street addresses for Unknown Officers #1, and apparently Loney has made no attempt to serve them.[20]

_____

[20] The Court notes that on August 31, 2011, Loney submitted a "DECLARATION" requesting automatic disclosure of the identities of Unknown Officers #1 pursuant to Fed. R. Civ. P. 26(a)(1)(A).   (Docket No. 105.)   Pro se actions by federal

It is ultimately Loney's responsibility to serve Defendant Unknown Officers #1 in accordance with the May 12, 2011 Order. Accordingly, Loney will be required to show good cause, within eleven (11) days of the date of entry hereof, for not effecting service on Defendant Unknown Officers #1.  Failure to do so will result in dismissal of his claims against these Defendants. Fed. R. Civ. P. 41(b).

### V.   Conclusion

Accordingly, Officer Sims's Motion for Summary Judgment (Docket No. 76) will be GRANTED.   Trooper George's Motion for Summary Judgment (Docket No. 80) will be GRANTED.  Loney will be ORDERED to show good cause for not effecting service on Defendant Unknown Officers #1.   Loney has also filed a motion objecting to George's notice to substitute counsel (Docket No. 121).  Loney's motion (Docket No. 121) is DENIED.  The Clerk is DIRECTED to send a copy of the Memorandum Opinion to Loney and counsel of record.

An appropriate Order shall issue.

/s/   _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  December 7, 2011

_____

prisoners, however, are exempt from the disclosure requirements of Rule 26(a)(1)(A).     Fed.  R.  Civ.  P.  26(a)(1)(B)(iv). Therefore no action will be taken on this request.